6-2, TB2M, LLC versus McCaffey. Okay, you're finally going to tell me the correct pronunciation of your client's name. T-V-I-I-M. T-V-I-I-M. Okay. T-V-I-I-M. All right. Thank you. Let's make sure. Why don't you give the other side a minute to get organized. You good? Okay. Please. May it please the court. One of the first judges we had in the matter had the same issue, and he wanted us to come up with a better name than T-V-I-I-M. And this case also seems interesting in that we have a similar claim term as to the prior argument in response to it. But this case, again, is not a case about claim construction. And what I find interesting about this case is that McCaffey concedes that a district court's decision affirming the jury's verdict of both infringement and invalidity cannot be reconciled with any single ordinary meeting of the three claim terms relied upon by their expert. So we're in an instance here where on post-trial motions, the judge is obligated to apply the facts the jury's heard against the verdict, but also apply it to the correct law. And that would include the claim construction. The construction of the claims is the law of the case that the facts must be applied against. In this instance, it is impossible to reconcile a finding of infringement and invalidity with any single claim construction. What does it matter if you concede that there's substantial evidence to support the verdict for one or the other? I mean, if you say, you lose either way, don't you? No, we don't, because you can't do it as to both. So therefore, you have an error. But what if we do it just as to one? And that's the argument that McAfee makes. McAfee makes the argument that if there's an invalidity... What's the legal authority that we're prohibited from applying substantial evidence to just one of them? Well, that would be state contracting engineering, which says that you must apply the same construction to both validity and infringement. So you're right. If you apply one construction, you can sustain an invalidity verdict. But that then proves that the infringement verdict is wrong, because it cannot be sustained by that same construction. But let's assume the infringement verdict is wrong, that you've conceded that the patent is invalid. No. Oh, sorry. Well, it looked to me like the district court in the J-Mall said that the verdict was sustainable under 103. Obvious. Yes. Then that would go to the issue. Yes. And validity. That's what Raymond read the J-Mall order to say. I did not read you to appeal that decision on the J-Mall. Because you'd have the same... Let me just... Yes, sir. I didn't read you to say, oh, no, no, you're wrong. The verdict could not be sustained under 103. So what I'm stuck with in my little brain is that I have a case in front of me where a district court judge said the jury's verdict is sustainable under 103. You didn't appeal that. Why do I care if the jury got infringement right or wrong? Because it's textbook law. You cannot infringe an invalid patent. So going forward, out there in the world, maybe, yeah, make you feel better if somebody told you the jury screwed up on infringement. And if the jury did not make a mistake on validity, your patent is gone. You're not going to be able to assert that patent ever again. Absolutely, Your Honor. But we have to take a step back. We have to take a step back because the verdict must be evaluated based on a construction. And it must be evaluated based on a single construction. So you can adopt... So what? So what? If there is a construction out there that's just fine, and pursuant to that instruction, unfortunately, your client's patent is invalid, gone, and lost forever. And that is inconsistent. And I think what Judge Arena was asking was, like, so who? So what if the jury made a mistake on infringement? Because the verdict cannot be sustained on a single construction. You are allowing a court to adopt one construction to find a patent invalid, and then say, end of story. You say it's harmless, and in this case, it's harmless error. It's not harmless error because the first step... Assuming if it was harmless error, you would agree with me, you wouldn't have a case. Absolutely, if it was harmless error. And here's why the... So where's the harm if you conceded that your patent is invalid, right? Where's the harm to you to not having a paper statement that there was infringement, which has no legal effect? We don't... It's like something the patent deacon's going to hang up in his office to say, I got them, but I didn't get any money for them. We don't concede the patent is invalid. What we concede is you can come up with a construction that could support invalidity. And that same construction would support invalidity on anticipation or invalidity on obviousness. But in your view, it won't support infringement. And that goes to the fundamental tenet of claim construction, which is you must apply the same construction to both invalidity and infringement. And that... But we don't know what the jury did and whether the jury might have done that, but nonetheless erred in its conclusions with respect to infringement, but not invalidity. And that's why the simple question to the district court and to McAfee on appeal is, what is any conceivable construction you can come up with? Come up with any conceivable construction that could exist as to these three terms that could sustain both a finding of invalidity and infringement. Isn't there a question here as to whether or not you ever asked for interpretation of those terms? The terms were not subject to construction because... You know what I mean? Maybe I'm missing something. It seemed to me that we had a case here where you're making a fundamental claim construction argument on appeal. That there was an invalid jury verdict here because you can't have it both ways with the same claim construction. But you never challenged the claim construction and the construction you're offering now, which is the predicate for your end argument, depends on the claim construction that you're offering us for the first time. I'm not offering any claim construction. I'm asking anyone to come up with any imaginable claim construction that would sustain the verdict. The issue of what happened here at the trial level, while there was no objection, is you have two elements when you're doing this type of evaluation. You have the construction, and then you have whether the facts support the construction. In connection with the cross-examination of McAfee's expert... The argument here that you're making, I'm certain they'll make when they get up, which is to say that you're really wrong in thinking that there is this one claim construction, and if you apply it, you can't apply it to both claim construction and infringement. You know, the argument in their red brief, which I think maybe you're responding to. Yes. If they're right that there's room for wiggle, which there always is in these patent cases, then the jury appreciated it. They're smart people. They saw the wiggle room, right? In which case, there's no inconsistency between the so-called interpretations, and your argument falls right on its face. Here's why it doesn't, and I would... You hear what I'm saying. I absolutely hear what you're saying, and you should, when you read McAfee's... You're absolutely right, Your Honor, and that's why McAfee could have come forward with a construction that would have supported it. But what they did instead is they said the only way you can sustain a verdict of infringement and invalidity here is to reconstrue the only term that was construed, vulnerability. They say, yes, the verdict of invalidity and infringement can be sustained if you find that all discrepancies are vulnerabilities, and the court below specifically rejected that construction. Every single witness in the case said all discrepancies are not vulnerabilities, and McAfee in its brief comes up and argues, well, that's a false distinction. All discrepancies must be vulnerabilities. Therefore, we win, and they're right. If all discrepancies are vulnerabilities, then you can rationalize a single construction for infringement and invalidity, but they didn't appeal the vulnerability construction. The vulnerability construction is an exploitable weakness, and not all discrepancies are vulnerabilities. File permissions, file errors. A discrepancy could actually make a file more secure. If it's more secure, it's a discrepancy, but no one would contend that's a vulnerability. So in this instance, this is not an instance where we can sustain a verdict on invalidity so we don't need to deal with issues of infringement because you can't infringe an invalid patent. You have a different issue here. You have the same legal principle that is up. Can this verdict be sustained by a single construction, ordinary meaning construction of these three terms, and it cannot. So simply saying you have a construction that supports invalidity does not answer the question of, and the question that's before this court is, did the district court err in not first, in not applying the facts of the case to a single construction of the three terms? I guess what you're saying sounds so strange to me because when we get a lot of cases and there are problems that arise when everybody says ordinary meaning and then we get O2 micro or questions about the court. So now you're suggesting a scenario whereby you agree ordinary meaning and then at the end of the day your analysis really comes down to somebody picking the correct ordinary meaning, which is something you could have sought at the outset. So the judge, in order to evaluate, is going to have to figure out what the ordinary meaning is because now you say we've got a plate full of potential ordinary meanings and we're trying to pick one of those and see if the infringement and validity verdict can fit within that. Isn't that a strange way to proceed? That's not the way I'm proceeding, Your Honor. The way I proceeded in this case was we had ordinary meaning constructions. Their expert offered these three terms by their ordinary meaning would not support infringement because all elements were practiced. So I said taking your ordinary meaning expert, let's look at invalidity, and the facts would not support invalidity. So we're not asking for a particular construction. We're asking does the facts of this case support any construction? And it doesn't. And I agree, Your Honor. You have a number of cases, the O2 issues, where parties are arguing, well, the ordinary meaning should have been construed and you didn't object as to ordinary meaning so there was a dispute and you should have resolved that dispute before. That's not where we're at. This case could have very, very easily been resolved. It's in a very different procedural posture where McAfee simply had to come up with any ordinary meaning construction. The district court simply had to come up with any ordinary meaning construction. If the district court said here's the ordinary meaning construction, here's how the facts support that ordinary meaning, I could not come before you now and argue, oh, that ordinary meaning construction is wrong, that ordinary meaning construction is not supported by the record. We're doing the opposite here. We're saying we've got a set of facts. We've got a set of facts that the jury found. As I said to you earlier, if in a circumstance in which there is no meaning given to the ordinary meaning, you turn to a jury and you say, well, you used the ordinary meaning of those words, right? And I think you've conceded that there is a possible interpretation that the jury could have reached that could put all this together. So it could have happened. It's a black box. We don't know what happened inside the black box. They could have done it for one or the other. But you have the fundamental tenet. If we want to get rid of the tenet that you need to apply the same ordinary meaning to infringement or – I mean, they're eager to get up, I think. But my recollection from reading the briefs was that your adversary believes that there is a way of interpreting these claims that doesn't throw the baby out with the bath and defeats your argument that there's an inconsistency. Absolutely they do. But that requires a reconstruction of the only term construed by the court, which is vulnerability. Their entire brief depends on all discrepancies being vulnerabilities and a potential vulnerability being a vulnerability. And the district court rejected that construction. The district court said it has to be an exploitable weakness. It is undisputed that the prior art detects only discrepancies and lacks the logic to detect vulnerabilities. So you have an interesting argument. There's a couple problems with it, though. I mean, the first one that we pointed out to you, that you say there's substantial evidence that supports either one but not both. And the question is, are we looking at a harmless error situation here? The other one is that if, in fact, you really believe in your no single construction argument that you're presenting today, then you should have or you failed to have objected during the trial itself when counsel is now taking the same facts and making the arguments that are made before the jury. You didn't argue at that point to protect your no single construction argument. And you should have. Let me respond to that. That what we're talking about here is argument of facts as opposed to misapplying the construction. If we're going to take the position that every- During the trial, you should have. Once counsel started now straying into using the same facts to show, let's say, invalidity, you should have said no. I object. As a matter of law, Your Honor, you should have objected at that point in time for using the same set of facts, given that you can't use the same construction in order to find- that you have to use the same construction in order to find both invalidity and infringement. I know my time's running, but let me answer that question. That would apply then to every single case because in every single patent case, both when the facts are coming in and closing arguments coming in, the parties believe the facts they're presenting support their construction- support or consistent with proving or disproving infringement or invalidity. And they don't. That's why we have disputes. So what we are arguing here is we had competing facts. Our position was the facts don't support an ordinary-meaning construction here, and we dealt with it as we are supposed to, which is on cross-examination of their expert, showing that while he says this supports infringement, it doesn't support invalidity. And then with respect to my closing argument, I said the same thing. Mr. Mueller says these facts would support this construction, but I'm telling you, jury, it doesn't support that construction. Then you get to the judge in post-trial motions, and it's the simple principle that I just need to emphasize again. You must apply the same construction to validity and infringement. So the fact that the judge can find invalidity applying one construction doesn't end the story because that construction would not support the jury's verdict of infringement and violates the tenet that you must apply the same construction to both. Thank you. I'll reserve the rest of my time. You have no time left, but we'll restore two minutes of rebuttal. Oh, I thought I said, okay, thanks. No. You exceeded your time. We're two minutes beyond everything, but we'll give you two minutes of rebuttal. Yes, sir. Good morning, Your Honor. May it please the Court. My name is Joe Mueller, and with my colleague Chip O'Neill, I'm here today on behalf of McAfee. Your Honor, if I could, I'd like to start by just describing the procedural posture that in this case comes before Your Honors. This is an appeal of a post-trial decision of a jury verdict where the jury was presented with evidence of three anticipatory references as well as evidence of obviousness and was presented with three independent grounds for non-infringement, at least two for each asserted claim in the case. That evidence was reviewed by the district court judge again in the post-trial decision, and the district court judge said, and I quote, the court is firmly convinced that the jury's verdict is not mistaken. That's Appendix 10. Now, to pick up on a point Chief Judge Prost, you raised in your questioning of Mr. Schaefer, you asked whether the arguments that are being made today by TVIIM amount to a request to, I believe you were asking about, amount to a request to reverse engineer the black box of the jury verdict. That's indeed what has happened here in the briefing. Well, do you disagree with sort of the legal predicate for his theory, which is you have to now post hoc come up with the claim construction under ordinary meaning that you can reconcile with both the verdicts, or is it your view that starting with invalidity, if we can get to invalidity, which he kind of concedes, that there's one claim construction that would support invalidity, we don't have to worry about this black box theory about reconciling the two? Yes, Your Honor, I make two points in response to that. The first is this court and the Supreme Court has set forth a set of rules for how claim construction is supposed to occur. There can be a Markman hearing or, as in this case, claim construction can be litigated as part of the summary judgment process. There can be, in certain cases, claim construction issues that arise during the course of the trial, and if they're raised by the parties, the district court may decide them at that time. But this court has made quite clear that claim construction needs to be raised before the case goes to the jury. Once the jury has the case, it has in hand the claim language, the court's constructions of that claim language, and at that point it's the application of the claims to the facts. It's a fact issue.  So you agree that you have to have a same claim construction has to be applied to both invalidity and infringement, right? I would agree that the jury is supposed to be instructed on that. Point one, point one. Point two, you come along with an instance in which an adversary stands up and says, I don't believe that the verdicts can be squared on the same claim construction. Point two, that's what your adversary is saying. You have offered a claim construction that you believe solves the problem in your brief, right? No, Your Honor. Our arguments are about the application of the claims to the facts, and as we have described in our brief, the facts are entirely consistent. There's no inconsistency between the jury's non-infringement verdict and the invalidity verdict. We have not attempted to reconstruct the claims post hoc or reverse engineer the jury's decision. The point we've made in the brief is that there's nothing in the factual record that demonstrates that as a matter of fact, there was an inconsistency sufficient to grant a new trial. There's no claim construction requested on any of the three terms on which the plaintiff now relies before Your Honors. Not once. What about the claim construction issue, the one claim that was interpreted and your adversary says you're advocating a different interpretation of that limitation in order to square the verdicts? It's simply not true, Your Honor. The one claim term that was construed below was the term vulnerability. The term was construed to mean an exploitable weakness in the computer system. The judge twice ruled against the plaintiff. The plaintiff was trying to narrow the scope of that to exclude certain types of exploitable weaknesses, and the judge twice rejected that argument, once in the summary judgment decision, once in a second decision just prior to trial. Now we're hearing again an attempt to reimpose limitations on the meaning of that term. That's a term that there's no formal appeal of. It was the only term construed below, and there's no appeal of that term, and we're not relying on anything different than what the judge construed the term to mean, an exploitable weakness in the computer system. That's what I had understood. I got confused in the course of the argument, seeing to me that your adversary was positing three terms, three limitations in the claim previously undefined as a matter of claim definition that he would like a definition for now, and it seemed to me it's too late for that. You're exactly right, Your Honor. And the three terms are in response to or as a result of. That's the first term. There's actually two phrases, but they're quite similar. The second one is various utility functions, and the third is reporting the identified vulnerability. Those are three terms on which the inconsistency argument they're advancing to your honors relies. For none of those three terms was a request made to construe them. Before trial, at trial, as Judge Reyna pointed out, there was no objection to the jury verdict at the time it was raised. Ninth Circuit law requires you to raise an inconsistent jury verdict by way of objection to hold the jury over and allow the judge to re-instruct the jury to engage in further deliberations to resolve the inconsistency. There's no such objection made when the jury returned its verdict. So we have here an attempt to- Didn't the court actually give counsel the opportunity to raise the objection? It said, before I release the jury, and that was a time to raise this type of objection. That's correct, Your Honor. And the Dennis Stevenson case from the Ninth Circuit is squarely on point. You need to raise the objection at that time to allow for resolution of the inconsistency if possible, and that just never happened. And so what we have here is an attempt to reverse engineer the jury verdict and to impose on district court judges, and chief judge process goes to your question, to impose on district court judges a duty to construe claims. Your bottom line is that, assuming that there's out there three claim limitations that arguably should have been construed and weren't, but they weren't, and assuming, secondly, that a jury, if properly understood what a possible interpretation of those three terms, could not have reached these inconsistent verdicts. I understand that to be their argument. Yeah, but what you're saying is, so what? I think that's your argument. He's coming in and saying, let's go back to square one. There are these three limitations. If you'd interpreted them my way, then he believes the jury couldn't have found both invalidity and infringement. Not infringement. So, assuming he's right, you know, I sit down and I agree with it. It's too late, is your view, right? That's exactly right, Your Honor. It's too late now to make a claim construction argument after it was never raised before the jury returned a verdict and no objection was made to the verdict at the time it was rendered. Moreover, we think the evidence was entirely consistent. There's no inconsistency on the merits. But from a procedural perspective, the way that the case is supposed to unfold is to raise claim construction issues before the jury is instructed. And if there were any inconsistency at all, and again, we don't believe there was, an objection should have been made at the time the verdict was returned. We also believe, and Judge Reyna, you asked about this in your questions to Mr. Schaffer. Your best life preserver is the Ninth Circuit rule. And you have to remember, I mean, this court in its wilder and crazier days, I offer you Exon against Lubrizol, which I authored. We interpreted a claim fresh, we got criticized for it, on appeal that never even been challenged and flipped the jury verdict. So, it's within the range of possibility that somebody walks up to a panel of this court and if you get the right judges, they say, whoa, whoa, wait, those claims should have been construed. If they'd been construed, they would have been construed this way. If they'd been given to the jury that way, the jury couldn't possibly have come out with these two verdicts. We would say that under the Broadcom versus Qualcomm case and others, the court has made clear that if there's a dispute as to the meaning of a claim term, it should be raised before post-trial motions. And moreover, the concession that there's enough evidence to support the invalidity verdict alone suffices to resolve this appeal under the SendU case, the mobile media case. Is it? I mean, that was my first question. If we were to agree with much of what he says, and is that there's no jury that could have consistently applying the same claim construction, reach these two verdicts, is it your view that that doesn't matter? Because we can just look at the invalidity and see if there was sufficient evidence to affirm invalidity. It is, Your Honor. There's no claim construction that's been preserved for the reasons that I just described. And the concession that there was sufficient factual evidence to support the invalidity verdict is dispositive. That's the mobile media case. That's the SendU case. There's no need to reach infringement for an invalid patent. It's invalid. And that court, this court, I should say, in both SendU and mobile media, concluded that there was no reason to reach the infringement issues in light of the holding of invalidity. There's a concession that there's sufficient evidence. What was the setting in that case? Was it a jury case or there was no reason to reach it? I mean, if a district court judge says I have two claims here, I prefer to look at invalidity first. I look at invalidity or invalid, so boo, I'm not going to pay attention. Well, that is unassailably correct. But does that deal with the issue we have here where the other side's main argument is that there's an inconsistency in the verdict and therefore challenges the verdict on that basis? Those cases don't deal with this scenario, right? Your Honor, they wouldn't deal with that if that had been preserved as the argument below. If there had been a preserved argument that there was an inconsistency in the verdict, there had been an objection at that time, there had been claim construction issues raised before the verdict, we might be in a different place. But we're in a fact appeal. The claim construction— The Ninth Circuit law on preservation is your life saver. That's certainly one of the procedural failings. Didn't they just say that? It is one of the procedural failings, Your Honor, is the failure to object to the verdict as inconsistent at the time it was rendered. It sounds as if your adversary had preserved this by making an argument and saying, oh, don't release the jury yet, Your Honor, I got an inconsistent verdict. I think even then, Your Honor, we would still face the problem of not having— You really want to give that much up? I'm sorry, Your Honor? You want to give that much up? No, he doesn't. I don't think I do. They're trying to get it back, right? Yeah. Well, I'd say this, Your Honor. There certainly was a procedural failing in not objecting at the time of the jury verdict. In addition, there was a procedural failing in not raising any of these claim construction issues until after the verdict was returned. So we have no claim construction issues being argued before the verdict. We have no objection to the verdict. And the final point, Your Honor, is that on the merits, we're really dealing with a factual case. Can you line up the fact evidence on non-infringement and invalidity in a consistent way? And you absolutely can on all three issues. The first issue was in response to as a result of. The prior art products were products that identified vulnerabilities and offered tools or modules in response to the identification of vulnerabilities. We offered recipient fact testimony from folks who were involved with the prior art products, including a director, a vice president of strategic planning at a company that developed one of the products, a product manager for another product, and they testified on the stand to the jury that those products offered functionality in response to the identification of vulnerabilities. In contrast, the accused product doesn't do that. It's a software updating program for consumers. It allows you to update your programs if a new version is made available. The designer of that program testified on the stand, and he testified that there was no action taken. It doesn't even warn you that your computer is infected to beat the band unless they have something to fix it. Well, there's two ways in which the designer explained that it's not in response to, Your Honor. The first is, if there's no update available, as Your Honor's question— I was surprised because I thought the program did a little more than that, so I don't rely as much on it as I used to. Yeah, so the program will not notify users of the vulnerability if there's no update available. That's the first thing. Second thing is, if there is an update available, it always, always provides the update, even if there's no vulnerability in your current version. So there's no relationship between the identification of vulnerabilities and the provision of an update. That's the first issue. And we see that on that issue there's a difference, a categorical difference, between the accused product and the prior art, and therefore there's no inconsistency in the jury's verdict. Second issue, various utility functions. In the prior art, there were various utility functions. There was a module or a toolkit of options that were made available to users. First-hand, percipient witness testimony on that is two examples. The prior art programs allowed users to fix what are called permission errors, or too many people being given permission to certain programs. Prior art programs also allowed you to fix ownership issues, which is another problem that can arise with giving improper ownership over computer programs. That's multiple or various utility functions. In contrast, the accused product does one thing. It allows you to update your software. Again, there's differences between the accused products on the one hand and the prior art on the other, and therefore no inconsistency. And the last issue, Your Honor, is this question of reporting the identified vulnerability. In the prior art, it provided very detailed reports as to the vulnerability that had been identified, file path names, detailed information that information technology professionals would understand because those programs were designed for IT professionals. The accused product doesn't do that. It provides generalized risk ratings and no identification of particular vulnerabilities. The point is, Your Honor, is that on each of these three issues, the factual evidence is entirely consistent, or at a bare minimum, the jury was entitled to conclude it was. So we have no construction being requested on these three terms, any of them. We have the application of those terms to fact evidence before the jury. We have the jury being presented with firsthand witness testimony as to the prior art, firsthand witness testimony as to the accused products, expert testimony as to both. The jury was well within their discretion to conclude the patent was both invalid and not infringed. There's no inconsistency on any of these three issues. And moreover, there's all the procedural problems that we began the discussion with, the failure to request constructions, the failure to object. And for all these reasons, we would request the post-trial decision be affirmed. Thank you. Very quickly, Your Honors, the last analysis that Mr. Mueller just gave stems from the fundamental problem they have with the reinterpretation of vulnerability. I'll quote from their brief. The TVIM attempts to create a distinction between vulnerabilities on the one hand and discrepancies or potential vulnerabilities on the other. That's what they're arguing. On Appendix 1454, Mr. Mueller made that same argument to the district court, that there's no distinction between a discrepancy and a vulnerability. And the court says, absolutely, there can be. So all the analysis he just gave you on consistency depends on a reconstruction of vulnerability. And then to Judge Cleverjord, your argument about the claims need to be determined my way. They don't need to be determined my way. They need to be determined anyway. And Mr. Mueller made an important concession. He said, I'm not offering any construction of these three terms. I'm just saying there's facts that support it. We have the fundamental problem that you need to have the construction. That's what state contracting says. State contracting says that when you look at a post-trial motion, you must first define what the construction you're applying and show the facts support it. That hasn't happened here. And I would finally ask the courts to look at, which I think are the two most important cases, which are Hewlett-Packard and Broadcom. We're not asking for a construction. What we're asking to do, as it happened in Hewlett-Packard, is you apply the facts to the construction. Do the facts support a construction? This case is unique because McAfee could have come up with any imaginable type of construction. And if it was consistent, it would have been fine. They can't without reconstruing vulnerability. Thank you. Thank you. I think both sides, the case is submitted.